IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

HOWARD BANK,
*Plaintiff*,

v.

Civil Action No. ELH-18-3378

M/V "MOTHERSHIP," et al.
*Defendants*.

**MEMORANDUM**

This case involves the intersection of bankruptcy and admiralty law. The Court wades into murky waters in an effort to determine whether the district court may allow the bankruptcy court to administer the sale of a vessel that is at issue in both courts.

**I. Background**

On October 31, 2018, plaintiff Howard Bank filed a verified complaint in district court, seeking foreclosure against defendants M/V "Mothership" (the "Vessel"), Timothy Edward Horan, and Valerie Jo Horan, asserting admiralty jurisdiction. *See* ECF 1 (the "Complaint"). In particular, plaintiff alleged breach of contract as to the Horans, jointly and severally (Count I), and sought foreclosure of a preferred ship mortgage as to the Vessel (Count II). Plaintiff claimed exigent circumstances, and provided a sworn statement (*id.* at 5) in support of that contention. *Id.* ¶ 7.

In addition, plaintiff moved for appointment of substitute custodian (ECF 2) for the Vessel and for issuance of a warrant in rem (ECF 3), ordering the United States Marshal to take and retain custody of the Vessel. The Court granted the motions on November 1, 2019 (ECF 11; ECF 12), and the warrant was executed the next day. ECF 17. On November 2, 2019, the Court granted plaintiff's second "Motion for Order Appointing Substitute Custodian for the Vessel 'Mothership.'" ECF 15; ECF 16.

Since 2017, Mr. Horan has filed for bankruptcy three times, and Ms. Horan has filed for bankruptcy twice. *See In re Timothy & Valerie Horan*, Nos. TJC-17-16732, TJC-19-10407 (D. Md.); *In re Timothy Horan*, No TJC-18-25040. On November 14, 2018, after this suit was filed, Mr. Horan filed for bankruptcy. ECF 21-3. But, on December 21, 2018, Howard Bank notified the Court of the termination of the automatic stay in *In re Timothy & Valerie Horan*, No. TJC-17-16732. ECF 21 at 2.

Then, on January 30, 2019, Howard Bank notified the Court that the Horans had filed for bankruptcy on January 11, 2019. ECF 23; *In re Timothy & Valerie Horan*, No. TJC-19-10407. However, Howard Bank asserted that no automatic stay went into effect because of the Horans' prior bankruptcy filings. ECF 23; *see also* 11 U.S.C. § 362(c)(4)(a)(i). As discussed, *infra*, that assertion was not entirely correct.

On February 5, 2019, Howard Bank moved for judgment and sale of the Vessel (ECF 24), supported by several exhibits (ECF 24-1 to ECF 24-7), as corrected on February 6, 2019. ECF 25. Upon consideration of Howard Bank's motion, and by Order of February 6, 2019, the Court authorized the United States Marshal to sell the Vessel within thirty days. ECF 26.

Thereafter, on February 21, 2019, the Horans, who are self-represented in this Court, filed a consolidated "Response to Plaintiff's Motion for Judgment and Sale of Vessel 'Mothership'" and a "Motion for the Return of the Vessel to the Defendants, and Motion to Dismiss or, in the Alternative, Motion for Summary Judgment and/or Request for Hearing." ECF 27 (the "Motion"). Pursuant to Supplemental Federal Admiralty Rule E(4)(f), on February 25, 2019, the Court stayed the Order of February 6, 2019, pending resolution of the defendants' Motion. ECF 28.

On March 6, 2019, this Court held a status conference (ECF 31) with the parties, in open court, and on the record. During the status conference, counsel for plaintiff stated that in his earlier

notification to the Court (ECF 23), he had mistakenly informed the Court that there was no automatic stay in *In re Timothy & Valerie Horan*, No. TJC-19-10407.

Instead, at that time, an automatic stay was imposed at least as to the property of Ms. Horan's bankruptcy estate, which includes the Vessel. On March 1, 2019, the bankruptcy court terminated the stay "with respect to the debtor Timothy Edward Horan and property of his estate, and to Valerie Horan, personally, but not to property of the estate of Valerie Horan." *In re Timothy & Valerie Horan*, No. TJC-19-10407, ECF 44 (D. Md. Mar. 1, 2019). Because Ms. Horan owns an interest as a tenant in the entirety in the Vessel, a stay remained in effect as to the Vessel. *Id.*

The parties also addressed the significant cost of the custodial supervision of the Vessel, and Mr. Horan's belief that he could sell the Vessel for more than the Bank would obtain, and with while incurring far less in costs. *See, e.g.*, ECF 15, ¶ 8. In an Order of March 7, 2019 (ECF 32), I expressed concern about the potentially avoidable costs and expenses inherent in the storage of the Vessel, but noted that I was unable to take any action as to the Vessel because of the stay. Further, I directed the parties to notify the Court if and when the stay is lifted. *Id.*

On April 24, 2019, Bankruptcy Judge Thomas J. Catliota issued an order in the case of *In re Timothy & Valerie Horan*, No. TJC-19-10407, ECF 88. The order addressed two motions. In the first motion, Howard Bank sought relief from the stay so that it could proceed with foreclosure on the Vessel. In the second motion, the Horans sought turnover of the Vessel, pursuant to 11 U.S.C. § 542.

The bankruptcy court concluded that the motions could be easily resolved as a matter of bankruptcy law. *In re Timothy & Valerie Horan*, No. TJC-19-10407, ECF 88 at 3. It concluded that the Horans should have the first opportunity to sell the Vessel, by the end of the summer,

provided the Horans make monthly payments of $960 to Howard Bank, maintain adequate insurance, pay monthly dock fees for the Vessel, and maintain the Vessel in its current condition. *Id.* at 3-4.

However, because this Court has jurisdiction over the Vessel, the bankruptcy court determined that it could not order any action as to the Vessel. *Id.* at 5. Therefore, the bankruptcy court lifted the stay as to the Vessel to allow the case *sub judice* to proceed. *Id.* The bankruptcy court ordered that "if the District Court determines in the Admiralty Action that the boat will be released for sale in this case, the debtors must" comply with the aforementioned conditions and immediately list the boat for sale with a broker approved by the bankruptcy. *Id.* at 6.

By Order of April 25, 2019 (ECF 36, the "Order"), I advised the parties that I am inclined to release the Vessel from the Court's jurisdiction, thereby allowing sale of the Vessel to proceed, in accordance with the terms of Judge Catliota's order. I also directed the parties to advise the Court as to whether they consent to this disposition. *Id.* Further, I directed that if a party does not consent, by the same date, it must submit a memorandum addressing the issues, supported by legal authority. *Id.*

The Horans filed three "Emergency Lines." *See* ECF 37; ECF 40; ECF 43. On May 5, 2019, Howard Bank filed its opposition to the Court's proposed disposition. ECF 39.

The Court now considers whether it must allow the United States Marshal to sell the Vessel at auction or, in the alternative, whether it may initially allow the Horans to attempt to do so, in accordance with the terms established by the bankruptcy court.

## II. Discussion

"It is apparent that if there is a choice between the admiralty court and the bankruptcy court, disputed issues can be litigated in either forum." 3B BENEDICT ON ADMIRALTY § 42 (2019).

If "the stay has halted the admiralty foreclosure action . . . , then the bankrupt will have an opportunity to force litigation in the bankruptcy court as opposed to being required to intervene in the admiralty action." *Id.*

This case is strikingly similar to *Adams v. S/V Tenacious*, 203 B.R. 297 (D. Alaska 1996) and *O'Hara Corp. v. F/V N. Star*, 212 B.R. 1 (D. Me. 1997).

In *Adams*, 203 B.R. at 298, plaintiff brought an *in rem* action against a vessel and an *in personam* action against its owner-obligor and obligor based on a loan secured by a preferred ship mortgage on the vessel. The owner-obligor subsequently filed for Chapter 13 bankruptcy. She sought approval of a bankruptcy plan that would stay the foreclosure action to allow her time to repair the vessel and, as debtor in possession, sell it for its fair market value. *Id.* In response, plaintiff moved in the admiralty court for the court to declare that the automatic stay does not apply to the ship's mortgage and to permit foreclosure without regard to the ongoing bankruptcy. *Id.*

The admiralty court denied the motion because the dispute—"whether a debtor should have additional time to pay her debt"—arose from bankruptcy law, not admiralty law. *Id.* at 299. The court observed that the owner-obligor neither contested the mortgage nor denied that she was in default. *Id.* Further, there were no disputed facts or law that turned on admiralty law. Accordingly, "for the purposes of proceedings," the court referred the matter to the bankruptcy court and concluded that the stay under 11 U.S.C. § 362 governed the proceedings to enforce the preferred ship mortgage.

In *O'Hara*, 212 B.R. at 2, a lienholder brought an *in rem* action against a vessel and an *in personam* action against its owner. The lienholder sought to enforce its lien for repairs and equipment it had provided to the vessel. Subsequently, the owner filed for Chapter 7 bankruptcy. Plaintiff sought to have the reference to the bankruptcy court withdrawn or to "have the automatic

stay lifted to allow the immediate enforcement of the maritime liens." *Id.* The admiralty court denied the motion for withdrawal because "'[a]ny consideration of admiralty law would . . . be routine'" and the dispute was a "'run-of-the-mill bankruptcy case.'" *Id.* at 3 (quoting *Adams*, 203 B.R. at 299).

The Court also denied the motion to lift the automatic stay. *O'Hara*, 212 B.R. at 3. Further, the Court explained that its decision to honor the stay did not divest the court of jurisdiction over the admiralty claims. The Court reasoned, *id.* at 4:

> When the petition is filed in the bankruptcy court of the same district as the admiralty court, there is no conflict of jurisdiction since "the bankruptcy court is merely a unit of the district court," [*United States v. LeBouf Bros. Towing Co.*, 45 B.R. 887, 892 (E.D. La. 1985)], and "has no jurisdictional authority independent of this [district] court." *Id.* at 891; *see also Adams*, 203 B.R. at 300 ("The automatic stay does not . . . lead to the loss of jurisdiction . . . . [N]othing in [§ 362(a)] prevents the Article III court from exercising its jurisdiction over the admiralty claims of this case . . . . Rather, the statutory scheme for bankruptcy simply contemplates staying other matters while the debtor(s) exercise their rights in the Article I (bankruptcy) court.")

Like the owner-obligor in *Adams*, the Horans filed for Chapter 13 bankruptcy, although the bankruptcy court determined that the stay applied only to the property of Ms. Horan's estate. The Horans do not dispute the preferred ship mortgage, and they concede that they are in default. But, they contest exigency. The disputes are largely routine bankruptcy issues: whether the creditor or debtor has authority to sell the property (i.e., the Vessel), and who is in the best position to do so. "Any consideration of admiralty would therefore be routine." *Adams*, 203 B.R. at 299; *see also O'Hara*, 212 B.R. at 3. Indeed, as evidenced by plaintiff's lengthy discussion of the Horans' personal finances, the bankruptcy court is best equipped to resolve this matter. *See* ECF 39 at 5-6.

Accordingly, the "Court has jurisdiction over the vessel both in admiralty, 28 U.S.C. § 1333, and in bankruptcy, 28 U.S.C. § 1334. For purposes of the bankruptcy proceedings, however, the Court has referred the matter to the bankruptcy court." *Adams*, 203 B.R.

at 299 (citing 28 U.S.C. § 157(a)). Indeed, Local Rule 402 provides: "Pursuant to 28 U.S.C. § 157(a), all cases under Title 11 of the United States Code and proceedings arising under Title 11 or in related to cases under Title 11 shall be deemed to be referred to the bankruptcy judges of this District."

### III. Conclusion

As the *O'Hara* Court stated: "The District . . . has jurisdiction over this case and this vessel, both in admiralty and in bankruptcy. The only question is which part of the case proceeds first, and under the stay it will be bankruptcy." *O'Hara*, 212 B.R. at 4 n. 2.

I shall vacate the Court's "Order for Sale of the Vessel 'Mothership' by Public Auction" (ECF 26). Further, I shall release control over the Vessel "Mothership" to the bankruptcy court in the case of *In re Timothy & Valerie Horan*, No. TJC-19-10407.

I recognize that the stay of the bankruptcy court applies only to the property of Ms. Horan's estate and therefore does not apply to Howard Bank's *in personam* action against the Horans. *See In re Tubman*, 364 B.R. 574, 585 (Bankr. D. Md. 2007) ("Because these otherwise available protections would be abrogated, creditors can proceed against the debtor *in personam*, obtain a judgment, and attempt to obtain a lien upon property of the debtor to the extent any is available."). Nevertheless, for the reasons stated above, and in the interest of judicial economy, I shall stay this case until the Vessel is sold, but in no event later than September 6, 2019. This Court's stay shall apply to both the *in personam* and *in rem* claims in the admiralty court.[1]

And, in light of the stay, I shall deny all pending motions, including ECF 33, without prejudice to the right to refile after the Court lifts its stay.

---

[1] For example, if the Vessel is sold in the ensuing months, it is possible that this would have an impact on the *in personam* action.

An Order follows.

Dated: May 10, 2019
/s/
Ellen Lipton Hollander
United States District Judge

cc: Bankruptcy Judge Thomas J. Catliota